**AETNA CASUALTY AND SURETY COMPANY, Appellant,**

v.

**H. S. MOSS et al., Appellees.**

No. 13611.

Court of Civil Appeals of Texas.

San Antonio.

June 29, 1960.

Bailey & Williams, James A. Williams, Dallas, for appellant.

Raymond M. Myers, Brundidge, Fountain, Elliott & Bateman, Dallas, for appellee.

MURRAY, Chief Justice.

This suit was instituted by H. S. Moss and Moss Petroleum Corporation, herein-

after called Moss, against the Aetna Casualty and Surety Company, hereinafter called Aetna, on a fidelity bond conditioned to indemnify Moss against loss from any dishonest act of his employees, among whom was Orrie I. Dunkle, hereinafter called Dunkle, seeking to recover the sum of $6,183.25, plus interest, being the proceeds of "tank bottom accumulations" sold by Dunkle and appropriated to his own use.

The trial was to a jury which answered the five special issues submitted to it favorably to Aetna, but upon motion of Moss judgment was rendered in his favor, non obstante veredicto. Aetna has appealed.

In answer to Special Issue No. 1, the jury found that before 1949 Orrie Dunkle was told by H. S. Moss "to dispose of the basic sediment in oil tanks in any way he could." Appellant contends that the trial court erred in disregarding the jury finding and rendering judgment for Moss, non obstante veredicto, because such finding was supported by the evidence and determined a lack of dishonesty or fraud on the part of Dunkle. The fidelity bond guaranteed repayment for any loss suffered by Moss through any fraudulent or dishonest act or acts committed by any employee, and, of course, if Dunkle was not guilty of fraud or dishonesty, there could be no recovery by Moss. Dunkle had been a long-time employee of Moss, the last few years living in the area near Kilgore, Texas, and working as a superintendent and pumper in the East Texas Oil Fields. Prior to 1949, they had no equipment to take care of accumulations of basic sediment in tank bottoms, as they now have, and it was customary at that time to dispose of it in any way they could. It was at this time that H. S. Moss told Dunkle to dispose of the basic sediment in oil tanks in any way he could. Thereafter H. S. Moss was not active in the East Texas Field, and in 1950 John M. Little, Jr., was employed by Moss as general superintendent of the East Texas Field, and worked out of the Dallas office.

Dunkle testified that in 1947 or 1948, he learned that in disposing of tank bottoms he could obtain some remuneration therefor, and then he began to get money for this basic sediment or tank bottoms whenever a tank was cleaned. He testified that he never attempted to hide this fact from Moss. He continued to follow the usual procedure with regard to the filing of clean-out sheets and sending them to the Dallas office. When it became apparent that Moss was not utilizing the information given on the clean-out sheets and declaring the salvageable oil which should have been charged against the lease as to the allowable set by the Railroad Commission of Texas, Dunkle stopped sending them to Dallas and kept them in his "dog house" on the lease, on a clipboard, hanging on the wall, available for all the world to see. H. S. Moss and Little both testified that they knew nothing about these reports and had never seen them. In 1957, Little came into information which led him to discover that Dunkle had been selling these tank bottoms and appropriating the money to his own use. Over the years these sales had amounted to $6,183.25. On January 3, 1958, Dunkle was fired.

It is not disputed that property belonging to Moss was sold by Dunkle and the proceeds appropriated to his own use. Aetna undertook to secure a finding of the jury that in doing so Dunkle was not guilty of any fraud or dishonesty, because he was authorized to do so. The issue as submitted did not amount to a finding that Dunkle in appropriating these proceeds to his own use did not act fraudulently or dishonestly. The fact that Dunkle was told to dispose of tank bottoms in any way he could did not authorize him to sell them, put the money in his own pocket and not account for it in any way to Moss. The trial court made no implied findings which would aid the issue submitted, but on the contrary granted Moss judgment non obstante veredicto.

When Moss proved that Dunkle had sold his property and appropriated the proceeds

to his own use, without Moss' consent, he made out a prima facie case against Aetna upon the fidelity bond, and the defense that at a time when the tank bottoms were worthless H. S. Moss told Dunkle to dispose of them anyway he could, did not by any stretch of the imagination authorize Dunkle to sell these tank bottoms and appropriate the proceeds to his own use. Moss moved for an instructed verdict, which was opposed by Aetna upon the ground that there was an issue of fact as to whether Dunkle had acted fraudulently or dishonestly. Special Issue No. 1, as submitted, is not a finding that Dunkle did not act fraudulently and dishonestly in selling the tank bottoms and appropriating the proceeds to his own use.

■ Aetna next contends that the trial court erred in disregarding the jury's answers to Special Issues Nos. 2 and 3. In answer to Issue No. 2 the jury found that Moss had actual knowledge "that Orrie Dunkle was disposing of basic sediment for value," and by answer to Issue No. 3, that Moss had such actual knowledge in 1951. These findings are not supported by any evidence. Both H. S. Moss and Little testified they had no actual knowledge that Dunkle was selling tank bottoms and there is no evidence that they did. Aetna points out that both Moss and Little were interested witnesses and therefore the jury was not required to believe their testimony. This is true, but their evidence that they had no such actual knowledge cannot be twisted into evidence that they did have actual knowledge of the activities of Dunkle prior to December, 1957. Neither is the circumstantial evidence sufficient to support the findings of the jury. It creates nothing more than a surmise or speculation that Moss or Little might have had such actual knowledge. Dunkle testified that he sent reports of tank clean-outs to the Dallas office, and such reports as he did not send

in he hung upon the wall of his "dog house," where they could be seen by everyone, and that Little was often in his "dog house." These reports did not show that he was selling these tank bottoms and pocketing the proceeds. The evidence shows that Dunkle had the equipment to clean up these tank bottoms without the necessity of cleaning the tanks and disposing of the tank bottoms.

■ Aetna further contends that the jury having found that Moss had actual knowledge that Dunkle was disposing of these tank bottoms as early as 1951, that Moss' cause of action was barred by the statute of limitations, and that Moss' failure to give proper notice of loss barred recovery. Neither limitation nor failure to give notice was plead and therefore could not have been considered. Rule 93(m), T.R.C.P., reads as follows:

"That notice and proof of loss or claim for damage has not been given, as alleged. Unless such plea is filed such notice and proof shall be presumed and no evidence to the contrary shall be admitted. A denial of such notice or such proof shall be made specifically and with particularity."

The statute of limitations unless plead is waived. Rule 94, T.R.C.P. Mueller v. Banks, Tex.Civ.App., 317 S.W.2d 254; Stanton v. Brown, Tex.Civ.App., 269 S.W.2d 853.

■ In answer to Special Issues Nos. 4 and 5, the jury found that Moss should have known, in the exercise of ordinary care, as early as 1949 that Dunkle was disposing of basic sediment for value, but these findings do not constitute a defense to this suit. Aetna does not here contend that the jury's answers to Issues Nos. 4 and 5 entitled it to judgment.

The judgment is affirmed.